**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


JOLON DEVON CARTHORNE, SR.,       )
                                  )
            Petitioner,           )
                                  )
      v.                          )          1:10CR96-1
                                  )          1:14CV447
UNITED STATES OF AMERICA,         )
                                  )
            Respondent.           )


**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 42) and his Motion to Amend [his] Section 2255 Motion with a New Issue ("Motion to Amend") (Docket Entry 53).[1]  For the reasons that follow, the Court should deny relief.

BACKGROUND

This Court (per now-Chief United States District Judge William L. Osteen, Jr.) entered a Judgment against Petitioner imposing, inter alia, consecutive prison terms of 240 and 60 months, as a result of his guilty plea to possessing with intent to distribute 489.8 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A) and possessing a firearm in furtherance of a drug

---

[1] Parenthetical citations refer to Petitioner's criminal case.

trafficking crime in violation of 21 U.S.C. § 924(c)(1)(A)(i). (Docket Entry 25; see also Docket Entry 3 (Indictment); Docket Entry 11 (Plea Agreement); Docket Entries 29 & 30 (Plea Hrg. Tr.); Docket Entry 32 (Sent'g Hrg. Tr.).) The United States Court of Appeals for the Fourth Circuit affirmed and the United States Supreme Court declined further review. United States v. Carthorne, 726 F.3d 503 (4th Cir. 2013), cert. denied, ___ U.S. ___, 134 S. Ct. 1326 (2014). Petitioner then timely filed the instant Section 2255 Motion (Docket Entry 42), along with a Brief-in-Support (Docket Entry 43). The United States responded (Docket Entry 49) and Petitioner replied (Docket Entry 52). Petitioner thereafter filed the instant Motion to Amend. (Docket Entry 53.)

## SECTION 2255 MOTION

The instant Section 2255 Motion identifies this lone claim: "WAS [PETITIONER] DENIED EFFECTIVE ASSISTANCE OF COUNSEL DURING THE SENTENCING PHASE OF HIS CASE?" (Docket Entry 42, ¶ 12(Ground One).) In lieu of providing "[s]upporting facts" for that claim in the instant Section 2255 Motion, Petitioner referred the Court to his Brief-in-Support. (Id., ¶ 12(Ground One)(a).) The Brief-in-Support "contends that [Petitioner's trial-level counsel] was deficient in his failure to object to the inclusion of [a] conviction [for Assault and Battery on a Police Officer ('ABPO')] under [Virginia law] as a predicate crime of violence for the

2

career offender enhancement [in U.S.S.G. § 4B1.1(a)]." (Docket Entry 43 at 16.)[2] That claim fails as a matter of law.

As Petitioner's Brief-in-Support notes, "[o]n appeal, [his appellate counsel] argued that [this Court] erred in determining categorically that [Petitioner's] prior [ABPO] conviction was a crime of violence, within the meaning of [U.S.S.G.] § 4B1.1(a)." (Id. at 10.) Due to the absence of an objection to that determination at sentencing, the Fourth Circuit "review[ed] this issue for plain error." Carthorne, 726 F.3d at 509.[3] In doing so, the Fourth Circuit first pointed out that:

---

[2] "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a); see also U.S.S.G. § 4B1.2(a) (defining "crime of violence" for purposes of Section 4B1.1(a)). Without objection by Petitioner, the Court (per now-Chief Judge Osteen) adopted the factual findings and guideline calculations in Petitioner's Presentence Report, including that his "Virginia ABPO conviction was a 'crime of violence,' within the meaning of Section 4B1.2(a)." Carthorne, 726 F.3d at 508.

[3] "To establish plain error, a defendant has the burden of showing: (1) that an error was made; (2) that the error was plain; [] (3) that the error affected his substantial rights . . . [; and (4) that] the error would result in a miscarriage of justice or would otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." Carthorne, 726 F.3d at 510 (internal quotation marks omitted). On appeal, the United States did "not remotely suggest[] that [the plain error test's] steps three and four [we]re unsatisfied in this case." Id. at 520 n.2 (Davis, J., concurring in part and dissenting in part).

> The Guidelines define a "crime of violence" as any state or federal offense punishable by imprisonment for a term exceeding one year, that
>
>> (1) **has as an element the use, attempted use, or threatened use of physical force against the person of another,** or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or **otherwise involves conduct that presents a serious potential risk of physical injury to another.**

Id. at 510 (block quoting U.S.S.G. § 4B1.2(a)) (bold added); see also United States v. Shell, 789 F.3d 335, 341 (4th Cir. 2015) (denominating first prong of above-quoted definition as the "force clause"); Carthorne, 726 F.3d at 510 ("[T]he second prong of this definition includes a 'residual clause' that encompasses offenses, other than the listed crimes, which present a comparable 'serious potential risk of physical injury to another.'").

Next, the Fourth Circuit observed that United States v. White, 606 F.3d 144 (4th Cir. 2010), "held that the Virginia offense of 'assault and battery against a family or household member' did not have 'as an element, the use or attempted use of physical force.'" Carthorne, 726 F.3d at 513 (quoting White, 606 F.3d at 153) (internal citation omitted). The Fourth Circuit then reasoned:

> This principle is equally applicable in the present case, in which common law battery is a required element of ABPO in Virginia. In accord with our analysis in *White*, therefore, we hold that because ABPO in Virginia encompasses any common law battery, however slight, that statute does not categorically have "as an element the

4

use, attempted use, or threatened use of physical force against another."

Id. (quoting U.S.S.G. § 4B1.2(a)(1)).

Having ruled out the force clause of Section 4B1.2(a)(1) as a basis for deeming Virginia's ABPO offense a crime of violence, the Fourth Circuit addressed the "argument that ABPO in Virginia nevertheless categorically qualifies as a crime of violence under the residual clause of Section 4B1.2(a)(2), because that offense 'presents a serious potential risk of physical injury to another.'" Id. Despite acknowledging the acceptance of that argument by "some of [its] sister circuits addressing ABPO in other jurisdictions," id. at 514 (citing Rozier v. United States, 701 F.3d 681, 682 (11th Cir. 2012), United States v. Dancy, 640 F.3d 455, 470 (1st Cir. 2011), and United States v. Williams, 559 F.3d 1143, 1149 (10th Cir. 2009)), the Fourth Circuit ruled that

> because the elements of the crime of ABPO in Virginia can be satisfied in widely diverging contexts, including the use of a poking finger or the incidence of other minimal physical contact, . . . ABPO in Virginia does not constitute an offense 'that ordinarily induces an escalated response from the officer that puts the officer and others at a similar serious risk of injury,' within the meaning of Section 4B1.2(a)(2).

Id. at 515 (quoting United States v. Hampton, 675 F.3d 720, 731 (7th Cir. 2012)); see also Johnson v. United States, ___ U.S. ___, ___, 135 S. Ct. 2551, 2560 (2015) (acknowledging conflict between Williams and Carthorne). "Accordingly, . . . [the Fourth Circuit] h[e]ld that [this] [C]ourt [per now-Chief Judge Osteen] erred in

determining that [Petitioner's] convictions for ABPO in Virginia categorically qualified as a crime of violence under Section 4B1.2(a) of the Guidelines." Carthorne, 726 F.3d at 515.

"Based on [that] holding, [the Fourth Circuit] turn[ed] to the second step of [the] plain error analysis to consider whether the [foregoing] error was 'plain' . . . [and] conclude[d] that [it] was **not so clear or obvious** as to meet that high bar." Id. at 515-16 (bold added); see also id. at 516 ("An error is plain if the settled law of the Supreme Court or [the Fourth Circuit] establishes that an error has occurred." (internal quotation marks omitted)). In that regard, the Fourth Circuit explained:

> Prior to the present case, [the Fourth Circuit] had not addressed the issue whether ABPO in Virginia was a crime of violence under the Guidelines' residual clause. While [the] decision in *White* provided authoritative guidance about the elements of common law assault and battery in Virginia, requiring the conclusion that ABPO in Virginia does not have as an element the use, attempted use, or threatened use of physical force against the person of another, that decision was not binding precedent on the issue whether ABPO in Virginia is a crime of violence under the residual clause as presenting a serious potential risk of physical injury to another.
>
> [The Fourth Circuit] further observe[d] that [its] sister circuits are not in accord on the issue whether the offense of assault and battery on a police officer in other jurisdictions qualifies as a crime of violence (or violent felony) under the residual clause.

Id. at 516 (internal citations and quotation marks omitted); see also id. (holding that no Supreme Court decisions undermined contrary circuit rulings or analyzed ABPO-related offenses).

6

"In sum, [at the time of Petitioner's appeal] neither the Supreme Court nor th[e Fourth] Circuit ha[d] yet addressed the particular question [he presented] involving the residual clause of Section 4B1.2(a)(2), and the other circuits that ha[d] considered the question remain[ed] split on the issue." Id. Under such circumstances, "a district court does not commit plain error by following the reasoning of another circuit." Id. As a result, the Fourth Circuit found no plain error as to Petitioner's career offender designation and affirmed his Judgment. Id. at 517.

Given the foregoing, Petitioner properly infers that, "[h]ad [his trial-level counsel] objected to the use of [the ABPO conviction . . . as a predicate offense for the career offender enhancement at the sentencing hearing, the . . . Fourth Circuit would have been able to remand [Petitioner's] case back to th[is C]ourt for re-sentencing [with a lower advisory Guidelines range]." (Docket Entry 43 at 10 n.10.) That fact would appear to establish prejudice attributable to the bypassed objection (i.e., but for the lack of an objection, Petitioner possessed a "reasonable probability" of ultimately receiving a lesser sentence); however, to obtain collateral relief, Petitioner also must show that his trial-level counsel's decision not to object constituted professional incompetence when viewed in the light of reasonable standards for defense attorneys, free of the "distorting effects of hindsight." Strickland v. Washington, 466 U.S. 668, 689 (1984).

"Surmounting *Strickland*'s high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted). Indeed, "counsel is **strongly presumed** to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690 (bold added); see also Woodruff v. Warden, Perry Corr. Inst., C.A. No. 9:07-2739-PMD-GCK, 2008 WL 4200291, at *7 (D.S.C. Sept. 8, 2008) (unpublished) ("In order to meet the constitutional standard for effectiveness, representation by counsel must only be objectively reasonable, not flawless or to the highest degree of skill. Inherent in this standard is the acknowledgment that even the most skillful defense attorneys are bound to make mistakes, sometimes very important mistakes . . . . If the legal system were to afford prisoners a cause of action merely for demonstrating that, in hindsight, their trial counsel could have done something better, the court system would be choked with habeas petitions and trials on those petitions." (internal citation and quotation marks omitted)), appeal dismissed, 326 F. App'x 698 (4th Cir. 2009).

Petitioner cannot overcome Strickland's high bar in this instance, essentially for the same reasons that the Fourth Circuit found no plain (i.e., obvious) error on direct appeal. A decision

8

from the United States Court of Appeals for the District of Columbia Circuit illustrates the point:

> [The defendant's] argument that the district court erred by not giving a special unanimity instruction was not properly preserved at trial.
>
> Accordingly, we review for plain error. . . .
>
> The dispositive question is whether this error was plain, a term synonymous with clear or, equivalently, obvious. As its name suggests, **plain error exists only when the error is obvious.** Obviousness is assessed from the perspective of the trial court; the error must be so plain the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it. . . . Neither the Supreme Court nor this court has spoken to the issue, and . . . [thus t]he district court did not *plainly* err in failing to deliver a *sua sponte* special unanimity instruction.
>
> . . . [The defendant] argues in the alternative that his lawyer's performance abridged his Sixth Amendment right to effective assistance of counsel . . . . To establish [that] claim . . ., [he] must prove that [his] counsel's performance fell below an objective standard of reasonableness under prevailing professional norms . . . . As a general matter, the bar of objective reasonableness is set rather low.
>
> . . . [The defendant contends] an objectively reasonable attorney would have avoided plain error review by requesting [a special unanimity] instruction. We reject this argument. . . . A perfect lawyer with unlimited resources might have made a careful study of this difficult area of law, read the tea leaves, and lodged whatever objection his reading of the [law] might fairly support. The Sixth Amendment, however, does not pledge perfection. Had trial counsel neglected a jury instruction to which his client was **obviously** entitled, our conclusion might be different. But there is little that is **obvious** about special unanimity instructions, **as evidenced by our refusal to find plain error in the district court's omission of such an instruction.**

<u>United States v. Hurt</u>, 527 F.3d 1347, 1355-56 (D.C. Cir. 2008) (internal citations and quotation marks omitted) (italics in original) (bold added).

In other words, "[t]he failure to object to a single error that is either **unobvious** or nonprejudicial does not stamp counsel's overall performance with a mark of ineffectiveness.  It would be nonsensical if a petitioner, on collateral review, could subject his challenge of an unobjected-to error to a lesser burden [than he bore on direct appeal] by articulating it as a claim of ineffective assistance."  <u>Gordon v. United States</u>, 518 F.3d 1291, 1298 (11th Cir. 2008) (internal citation and quotation marks omitted) (bold added).  "In light of the fact that there was **no controlling authority** at the time [of sentencing], the Court [should] not find that the performance of [] [P]etitioner's trial[-level] counsel fell below an objective standard of reasonableness [when he opted not to object to the career offender enhancement].  Therefore, [the Court should conclude P]etitioner has not sufficiently demonstrated ineffective assistance of counsel . . . ."  <u>Brown v. United States</u>, Nos. 4:05CR770TLW, 4:08CV70050TLW, 2011 WL 4544084, at *12 (D.S.C. Sept. 30, 2011) (unpublished) (bold added), <u>appeal dismissed</u>, 539 F. App'x 311 (4th Cir. 2013); <u>see also</u> <u>LeCroy v. United States</u>, 739 F.3d 1297, 1323-24 (11th Cir. 2014) ("The problem with [the petitioner's] argument is that it invites us to evaluate counsel's

conduct retrospectively, rather than at the time of trial. . . .
*Strickland* is concerned with prevailing professional norms at the
time of trial, not with subsequent developments in the law."),
<u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 1528 (2015).[4]

Based on these considerations, the Court should deny relief on
the instant Section 2255 Motion.[5]

_____

[4] Indeed, beyond the lack of <u>controlling authority</u> at the time
of Petitioner's sentencing, even the Seventh Circuit's decision
that an ABPO offense failed to satisfy the terms of the residual
clause, which the Fourth Circuit found persuasive in ruling
Petitioner's career offender designation errant, <u>see</u> <u>Carthorne</u>, 726
F.3d at 515 (quoting <u>Hampton</u>, 675 F.3d at 731), did not come out
until March 27, 2012, <u>see</u> <u>Hampton</u>, 675 F.3d at 720, more than eight
months after Petitioner's sentencing on July 21, 2011 (<u>see</u> Docket
Entry 32 at 1).  It also bears noting that Petitioner's trial-level
counsel otherwise pursued an effective sentencing strategy.  <u>See</u>
<u>Carthorne</u>, 726 F.3d at 509 ("[Petitioner] requested a downward
departure or variance . . ., citing his cooperation with law
enforcement officials and his family obligations. . . . [This]
[C]ourt [per now-Chief Judge Osteen] varied downward by 22 months
from the low end of [Petitioner's] Guidelines range . . . .").

[5] Petitioner's Reply states that, "[i]n light of <u>Descamps v.</u>
<u>United States</u>, [___ U.S. ___,] 133 S. Ct. 2276 (2013), [this] Court
erred in sentencing [him] as a career offender."  (Docket Entry 52
at 2.)  As an initial matter, Petitioner's belated invocation of
<u>Descamps</u> does not advance his cause because "*Descamps* is not
retroactive on collateral review."  <u>Lopez-Vera v. United States</u>,
Nos. 1:12CV55, 1:09CR226, 2015 WL 1717836, at *11 n.9 (M.D.N.C.
Apr. 15, 2015) (unpublished) (Schroeder, J.); <u>accord</u> <u>Johnson v.</u>
<u>United States</u>, Nos. 4:08CR876RBH-2, 4:14CV2438RBH, 2014 WL 7403972,
at *3 (D.S.C. Dec. 30, 2014) (unpublished), <u>appeal dismissed</u>, slip
op., No. 15-6140 (4th Cir. May 12, 2015); <u>Powell v. United States</u>,
Nos. 3:11CV377RJC, 3:06CR189RJC, 2014 WL 4793232, at *6 (W.D.N.C.
Sept. 25, 2014) (unpublished), <u>appeal dismissed</u>, 599 F. App'x 104
(4th Cir. 2015); <u>Eley v. United States</u>, Nos. 5:14CV263D,
5:11CR374D, 2014 WL 4199241, at *2 (E.D.N.C. Aug. 22, 2014)
(unpublished); <u>Baker v. Zych</u>, No. 7:13CV512, 2014 WL 1875114, at *2
(W.D. Va. May 9, 2014) (unpublished); <u>Williams v. Ziegler</u>, No.
(continued...)

## MOTION TO AMEND

The instant Motion to Amend seeks to add a new claim based on the Supreme Court's decision in <u>Johnson</u>, ___ U.S. at ___, 135 S. Ct. at 2563, declaring the residual clause of the "violent felony" definition in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), unconstitutionally vague. (Docket Entry 53 at 1-9.) Specifically, Petitioner has requested leave to assert that <u>Johnson</u> invalidated the residual clause of the Guidelines' definition of "crime of violence," U.S.S.G. § 4B1.2(a)(2), and that his career offender enhancement (which depended on the conclusion that his ABPO conviction qualified as a crime of violence under the residual clause of Section 4B1.2(a)(2)) therefore should not stand. (Docket Entry 53 at 1-9.) The Court should deny as futile

---

[5](...continued)
5:12CV398, 2014 WL 201713, at *2 n.3 (S.D.W. Va. Jan. 17, 2014) (unpublished); <u>Baldwin v. United States</u>, Civ. No. JFM-13-2006, Crim. No. JFM-08-117, 2013 WL 6183020, at *1 n.3 (D. Md. Nov. 25, 2013) (unpublished). Petitioner argues to the contrary based on <u>Olten v. United States</u>, ___ U.S. ___, 134 S. Ct. 639 (2013). (Docket Entry 52 at 6.) Other courts, however, have declined to construe <u>Olten</u>'s summary remand for reconsideration as having rendered <u>Descamps</u> collaterally retroactive. <u>See, e.g.</u>, <u>Bohannon v. United States</u>, No. 13-1255, 2015 WL 6036614, at *3 n.2 (W.D. Tenn. Oct. 15, 2015) (unpublished). In any event, Fourth Circuit authority prohibits Petitioner from mounting a <u>Descamps</u>-based collateral attack on his career offender designation. <u>See</u> <u>Martin v. United States</u>, Crim. No. PJM 02-178, Civ. No. PJM 14-472, 2015 WL 3780444, at *3 (D. Md. June 9, 2015) (unpublished) (discussing <u>United States v. Foote</u>, 784 F.3d 931 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 2850 (2015)). Finally, even if Petitioner could overcome the foregoing barriers, <u>Descamps</u> would not entitle him to re-sentencing, because "*Descamps* did not address ABPO or a related offense," <u>Carthorne</u>, 726 F.3d at 516.

12

Petitioner's attempt to pursue such a <u>Johnson</u> claim, <u>see generally</u> <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000) (ruling that "futility of amendment" warrants denial of leave to amend in Section 2255 context), for at least two reasons.

First, "[t]he language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review. The Supreme Court has instructed that only those errors presenting a fundamental defect which inherently results in a complete miscarriage of justice are cognizable." <u>United States v. Foote</u>, 784 F.3d 931, 932 (4th Cir.) (internal quotation marks omitted), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 2850 (2015). Here, the Court (per now-Chief Judge Osteen) "sentenced [Petitioner] within the statutory limits, and while the career offender designation may have affected the ultimate sentence imposed, it did not affect the lawfulness of the sentence itself — then or now. Therefore, [the Court is] simply not presented with exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." <u>Id.</u> at 943 (internal brackets, citation, and quotation marks omitted); <u>see also</u> <u>id.</u> at 940 ("[W]e conclude Appellant's career offender designation was not a fundamental defect that inherently results in a complete miscarriage of justice."), 941 ("[T]o the extent Appellant argues that he is 'actually innocent' of being a career offender, the Supreme Court has yet to stretch

[the] concept [of sentencing enhancement innocence] to non-capital sentencing, and we will not do so here.").

Second, even if Petitioner's proposed <u>Johnson</u> challenge constituted a collaterally cognizable claim, it would fail as a matter of law because "*Johnson* says and decided nothing about career-offender enhancements under the Sentencing Guidelines," <u>Beckles v. United States</u>, 616 F. App'x 415, 416 (11th Cir. 2015). Nor does the logic of <u>Johnson</u> extend to the Guidelines context, as well-explained by a judge of the neighboring court to the east:

> The advisory Sentencing Guidelines are not susceptible to vagueness challenges because they do not proscribe conduct. Rather, the advisory Guidelines serve merely as a guide to assist the sentencing judge in fashioning an appropriate sentence within the statutorily permissible range.
>
> A statute may be unconstitutionally vague where it fails to give ordinary people fair notice of the conduct it punishes, or is so standardless that it invites arbitrary enforcement. . . . The effect of the vagueness doctrine is twofold. First, the doctrine requires actual notice to citizens as to what conduct is or is not prohibited by the law. Second, the doctrine requires that a legislature establish minimal guidelines to govern law enforcement to prevent a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections.
>
> None of principles supporting the vagueness doctrine are implicated by the advisory Sentencing Guidelines. First, . . . the vagueness doctrine applies to *statutes* that create criminal conduct. By contrast the Sentencing Guidelines *do not create crimes*. They merely guide the discretion of the district courts in determining sentences within a legislatively-determined range.
>
> . . . .

14

In addition, the theoretical underpinnings of the vagueness doctrine are wanting because application of the vagueness doctrine to the advisory Sentencing Guidelines achieves neither desired effect. With regard to the actual notice effect, there is no constitutional right to be sentenced in accord with the advisory Sentencing Guidelines. It follows there is no constitutional right to receive actual notice of the sentence to be imposed under the advisory Sentencing Guidelines. With respect to the governance of law enforcement effect, that concern is wholly absent from the sentencing proceeding. Where the advisory Guidelines provide recommendations to the sentencing court there is no threat of spurious prosecutions or sporadic arrests. Rather, [the] defendant's guilt as to a constitutionally firm statute already has been adjudicated. There is no risk that the taint of arrest or the repercussions of criminal liability in the first instance will be disparately enforced by the several district courts sitting for the purpose of sentencing.

United States v. Cotton, No. 7:15CR21FL, 2015 WL 4757560, at *1 (E.D.N.C. Aug. 12, 2015) (unpublished) (internal brackets, citations, and quotation marks omitted), appeal filed, No. 15-4480 (4th Cir. Aug. 13, 2015); accord United States v. Matchett, 802 F.3d 1185, 1193-96 (11th Cir. 2015); contra United States v. Madrid, ___ F.3d ___, ___, 2015 WL 6647060, at *3-4 (10th Cir. 2015); United States v. Litzy, ___ F. Supp. 3d ___, ___, 2015 WL 5895199, at *6-9 (S.D.W. Va. 2015).[6]

---

[6] Petitioner has argued that the United States Court of Appeals for the Sixth Circuit "has already ruled that the ruling in Johnson applies to the residual clause of . . . Section 4B1.2(a)." (Docket Entry 53 at 2 (citing United States v. Darden, 605 F. App'x 545 (6th Cir. 2015)).) The Darden Court "vacated the defendant's sentence, because he had been sentenced under the career-offender residual clause, for reconsideration in light of *Johnson*. The court noted that the Supreme Court had done the same in a number of
(continued...)

In sum, Petitioner's proffered attack on his career offender designation based on <u>Johnson</u> fails as futile, due to the non-cognizability of such claims on collateral review, as well as <u>Johnson</u>'s inapplicability to provisions of the advisory Guidelines.

<u>CONCLUSION</u>

Petitioner has not shown entitlement to relief.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 42) and his Motion to Amend [his] Section 2255 Motion with a New Issue (Docket Entry 53), be denied without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 20, 2015

---

[6](...continued)
cases pending when *Johnson* was decided. . . . [Such action merely reflects] that those courts intended the continued vitality of the [career-offender] residual clause to be addressed by a lower court in the first instance." <u>Cotton</u>, 2015 WL 4757560, at *3 n.1 (internal citation omitted).